735 A.2d 1248

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Phillip A. CLARK, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 16, 1998.

Decided Aug. 17, 1999.

Ralph D. Karsh, Pittsburgh, for Phillip A. Clark.

Joseph P. Conti, submitted on brief, Garrett A. Taylor, Erie, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NIGRO, Justice.

On January 18, 1996, at approximately two o'clock in the morning, Officer Lester Fetterman of the Erie Police Department was on routine patrol. While on patrol, he received information from a radio dispatcher that a person had called the police and reported seeing two African–American males, one wearing a blue jacket and the other wearing a blue jacket with yellow sleeves, shining a flashlight into his vehicle parked in the driveway of his house at 722 East 22 nd Street. Shortly thereafter, the radio dispatcher reported that the suspects had left the area of the house and were last seen walking west on East 22 nd Street.

A few seconds later, Officer Fetterman heard another report over the radio from an officer. The officer reported that he and his partner had apprehended one of the suspects on the 600 block of East 22 nd Street, but that the other suspect had evaded apprehension and was last seen running towards the 600 block of East 21 st Street.

Upon hearing this report, Officer Fetterman drove to the 600 block of East 21 st Street. At first, he observed no one. Suddenly, however, he saw Appellant, who was wearing a blue jacket with yellow sleeves, pop out from between two houses, slowing down from a run to a walk. Officer Fetterman immediately stopped Appellant and observed that he was out

of breath. He then placed Appellant under arrest and conducted a search incident to the arrest. Upon reaching into Appellant's pocket, Officer Fetterman recovered a plastic bag of cocaine.

Appellant was charged by information with the crimes of loitering and prowling at night time,[1] possession of a controlled substance,[2] and possession of a controlled substance with the intent to deliver.[3] Prior to trial, Appellant filed a motion to suppress alleging in part that the search incident to his arrest violated his rights under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution, because the officer lacked probable cause to believe that Appellant was the person who had committed the crime and because the officer lacked probable cause to believe that a felony had been committed. The trial court granted the motion, finding that there was insufficient evidence to establish that Officer Fetterman had probable cause to believe that Appellant was the person who had committed the crime.[4]

On appeal, the Superior Court panel reversed the trial court's order without producing a majority opinion. Judge Hudock found that the trial court improperly reached its decision by focusing individually on each circumstance surrounding Appellant's arrest. Considering the totality of the circumstances and the evidence presented, Judge Hudock concluded that Officer Fetterman had probable cause to believe that Appellant was the person who had committed the crime. In addition, Judge Hudock rejected Appellant's alternative additional argument that his warrantless arrest was

1. 18 Pa.C.S. § 5506.

2. 35 P.S. § 780–113(a)(16).

3. 35 P.S. § 780–113(a)(30).

4. At the suppression hearing, Officer Fetterman admitted that upon seeing Appellant, he placed him under arrest and searched his pockets as part of a full search incident to the arrest. The Commonwealth did not argue before the lower courts, nor does it argue here, that Officer Fetterman attempted to conduct an investigative stop and pat down of Appellant.

unlawful because the officer lacked probable cause to believe that a felony had been committed.

In a concurring opinion, Judge Eakin focused on the reasons for the arrest rather than the sufficiency of the evidence. Responding to Appellant's alternative argument, Judge Eakin found that the officer could have concluded that the crime of theft was afoot, and explained that a warrantless arrest for theft is authorized by 18 Pa.C.S. § 3904. While recognizing that the charges ultimately filed against Appellant were for a misdemeanor, Judge Eakin stated that this fact does not mean the officer lacked probable cause to believe that the crime of theft had been committed, and thus the warrantless arrest of Appellant was lawful.

Judge Brosky, however, dissented. Considering the facts of this case, Judge Brosky found that Officer Fetterman only had reason to suspect that the misdemeanor crime of loitering and prowling at night time may have been committed. Judge Brosky explained that a warrantless arrest for a misdemeanor is lawful only when committed in the arresting officer's presence or when authorized by statute. Finding neither of these conditions present, Judge Brosky concluded that the warrantless arrest of Appellant was unlawful.

We granted Appellant's Petition for Allowance of Appeal to determine whether the warrantless arrest of Appellant was lawful. Based on our consideration of the relevant law as applied to the facts of this case, we now reverse the decision of the Superior Court.

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution provide that individuals shall be free from unreasonable searches and seizures. U.S. Const. amend. XIV; Pa. Const. art. I, § 8. An officer may conduct a full custodial search of a suspect when the suspect is lawfully arrested. *Commonwealth v. Long*, 489 Pa. 369, 374, 414 A.2d 113, 115 (1980). When an officer makes an unlawful arrest, any evidence seized during a search incident to the arrest must be suppressed. *See Commonwealth v. Lovette*, 498 Pa. 665, 676–77, 450 A.2d

975, 981 (1982). Consequently, the propriety of a search depends upon the validity of the arrest. In considering whether the illegal drugs recovered from the search of Appellant are admissible into evidence, therefore, we must first determine whether the officer's search of Appellant was made pursuant to a lawful arrest.

In determining whether Appellant was lawfully arrested, we begin with the notion that law enforcement authorities must have a warrant to arrest an individual in a public place unless they have probable cause to believe that 1) a felony has been committed; and 2) the person to be arrested is the felon. *Commonwealth v. Travaglia*, 502 Pa. 474, 484, 467 A.2d 288, 292 (1983). A warrant is also required to make an arrest for a misdemeanor, unless the misdemeanor is committed in the presence of the police officer. *Commonwealth v. Freeman*, 356 Pa.Super. 332, 340, 514 A.2d 884, 888 (1986); *Commonwealth v. Reeves*, 223 Pa.Super. 51, 52–53, 297 A.2d 142, 143 (1972). The legislature, however, has authorized law enforcement officers to make warrantless arrests for misdemeanors committed outside their presence in certain circumstances. Relevant to this case, the legislature has provided that officers have the same right of warrantless arrest for any grade of theft and attempted theft that they have for a felony. *See* 18 Pa.C.S. § 3904; *Commonwealth v. Walker*, 434 Pa.Super. 70, 641 A.2d 1204 (1994).[5]

Here, it is undisputed that Appellant did not commit a misdemeanor in the presence of Officer Fetterman. Upon hearing a report from the radio dispatcher, Officer Fetterman proceeded to the 600 block of East 21 st Street. While driving down the street, he saw Appellant run out from between two houses and gradually slow down. Without a warrant, he immediately placed Appellant under arrest. Since Officer Fetterman did not observe Appellant commit a misdemeanor,

5. Other examples include 75 Pa.C.S. § 3731(c), which authorizes officers to make warrantless arrests where they have probable cause to believe that an individual is driving under the influence of alcohol, and 18 Pa.C.S. § 2711(a), which authorizes officers to make warrantless arrests in certain instances of domestic violence.

the warrantless arrest of Appellant was unlawful unless Officer Fetterman had probable cause to believe that Appellant had committed either a felony or a misdemeanor outside of his presence for which the legislature has authorized warrantless arrests.

The Commonwealth argues that Appellant's arrest was lawful because Officer Fetterman had probable cause to believe that Appellant had committed either the crime of theft or attempted theft. A person commits the crime of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with the intent to deprive him thereof. 18 Pa.C.S. § 3921. Similarly, a person commits the crime of attempted theft if, with the intent to commit theft, he does any act which constitutes a substantial step toward the commission of the theft. 18 Pa.C.S. § 901(a). Although theft and attempted theft may be classified as either felonies or misdemeanors,[6] this classification is not relevant in this case since, as noted above, the legislature has authorized warrantless arrests for all grades of theft and attempted theft committed outside the presence of an officer. *See* 18 Pa.C.S. § 3904. Thus, in considering whether Appellant's arrest was lawful under the Commonwealth's theory, we must determine whether the officer had probable cause to believe that 1) the crime of theft or attempted theft was committed and 2) Appellant was the person who committed it. *Travaglia,* 502 Pa. at 484, 467 A.2d at 292.

■■■ To determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *Commonwealth v. Evans,* 546 Pa. 417, 422, 685 A.2d 535, 537 (1996). " '[P]robable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.' " *Evans,* 546 Pa. at 423, 685 A.2d at 537 (quoting

---

**6.** *See* 18 Pa.C.S. § 3903 (setting forth different grades of theft). Generally, attempted theft receives the grade that the crime would have received if the theft had actually been committed. 18 Pa.C.S. § 905.

*Commonwealth v. Gibson,* 536 Pa. 123, 130, 638 A.2d 203, 206 (1994)). Probable cause must be " 'viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training.' " *Id.* (quoting *Commonwealth v. Norwood,* 456 Pa. 330, 334, 319 A.2d 908, 910 (1974)).

Here, Officer Fetterman was on routine patrol at two o'clock in the morning when he was informed by a radio dispatcher that a person had called the police. The caller reported that two males had been in his driveway shining a flashlight into his vehicle and that they had left the area of his house. Shortly thereafter, an officer reported that he and another officer had attempted to stop two men, who met the description given by the radio dispatcher, and that one of them ran away.

These facts are not sufficient to establish that Officer Fetterman had probable cause to believe that a theft or an attempted theft had been committed. It was not reported that any property was unlawfully taken. In addition, it was not reported that the men had touched the vehicle in any way, or otherwise exercised control over the vehicle, to suggest that they were trying to steal it. There was also no information to suggest that the men were in possession of tools which would be used to steal a car. Instead, all that was reported was that two individuals were in a driveway shining a flashlight into a vehicle. This conduct, with nothing more, does not constitute a substantial step towards an unlawful taking. Thus, the reported activity did not provide Officer Fetterman with probable cause to believe that the crimes of theft or attempted theft had been committed.

As recognized by Judge Brosky, the caller in this case only reported conduct which fit the crime of loitering and prowling at night time. This crime is classified as a misdemeanor.[7] Since the crime was not committed in Officer Fet-

---

7. The statute states "[w]hoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or

terman's presence and since the legislature has not authorized warrantless arrests for this crime, a warrant was necessary to lawfully effectuate Appellant's arrest.

In sum, we conclude that the arrest of Appellant was unlawful because Officer Fetterman did not have probable cause to believe that Appellant had committed a crime which would justify his warrantless arrest. Since the arrest was not lawful, the illegal drugs which were seized from Appellant during the search incident to his arrest must be suppressed. *Lovette,* 498 Pa. at 676–77, 450 A.2d at 981. We, therefore, reverse the decision of the Superior Court.

Mr. Justice CASTILLE files a Dissenting opinion in which Madame Justice NEWMAN joins.

CASTILLE, Justice, dissenting.

I respectfully dissent from the majority's decision that the warrantless search of appellant was unlawful thereby resulting in the suppression of the fruits of that search. Appellant was apprehended by police after he was observed on a darkened driveway, in the early morning hours, shining a flashlight into a car that he did not own, which was parked on a private residential property that he did not own. The only reasonable inference that can possibly be drawn from appellant's conduct is that he and his co-conspirator were attempting to steal the car in question or items within the car. The law is abundantly clear that a police officer has the same right to arrest a suspect without a warrant for any grade of theft as exists for the commission of a felony. 18 Pa.C.S. § 3904. Because the police could reasonably have concluded in this case that appellant and his co-conspirator were attempting a theft, a warrantless arrest was lawful.

A warrantless arrest is appropriate where probable cause exists, which is determined by the totality of the circumstances test. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The totality of the circumstances test requires a court to determine whether "the facts and circum-

occupied by another, is guilty of a misdemeanor of the third degree." 18 Pa.C.S. § 5506.

stances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez,* 526 Pa. 268, 272–73, 585 A.2d 988, 990 (1991).

Here, the arresting officer responded to a radio dispatch that a suspect who had been observed earlier shining a flashlight into a car parked in the owner's driveway and whose description appellant matched was approaching the 600 block of East 21 st Street. The officer drove to the 600 block and at first saw no one, but then appellant suddenly emerged from between two houses, slowing from a run to a walk. I believe that the totality of these circumstances clearly gave the officer probable cause to believe that appellant had been in the process of attempting to commit the crime of theft. Thus, pursuant to 18 Pa.C.S. § 3904, the officer acted within his authority in arresting appellant without a warrant and conducting a search incident to a lawful arrest. *See Commonwealth v. Gwynn,* 555 Pa. 86, 99, 723 A.2d 143, 149 (1998) (stop and search of appellant proper where appellant was seen four times in short time period with a knapsack with something sticking out of it by a police officer in a high crime area where a burglary had been reported resulting in a reasonable conclusion that crime was afoot).

The majority asserts that this factual situation is not sufficient to establish probable cause for appellant's arrest. Certainly, any person of "reasonable caution" would conclude that appellant was in the process of committing either a theft of the vehicle itself (a third degree felony) or the theft of the contents of the vehicle. The law is clear that the commission of a crime includes the preparation to commit the crime, all steps toward the commission of the crime, the actual commission of the crime and flight following commission of the crime. Here, the conduct of appellant and his co-conspirator can hardly be deemed innocent conduct. I fail to see why it is unreasonable to conclude that two persons, unknown to the potential victim, who enter upon private residential property in the dead of the night with no license or permission to do so

and who shine a flashlight into the interior of a private vehicle obviously looking for the keys to the vehicle or for items of value in the vehicle and who take flight at the arrival of a police cruiser are not, as the majority concludes, taking a substantial step towards the commission of a theft crime? There is, beyond peradventure, no lawful or salutary purpose that can be associated with the conduct in question or the subsequent flight from the authorities upon their arrival.

Notwithstanding this failure on the part of the majority to link this conduct to criminal activity, the majority further fails to realize the practical problems associated with its suppression of the evidence. The majority would have the police officers in this situation who are called to a darkened scene by a concerned citizen first seek an arrest warrant before seizing a person such as the appellant. The difficulty arising from this requirement is as to just *who* will be named in this arrest warrant and just *what* becomes of the detainee while the police are seeking this warrant. The "who" can only be ascertained after detention of the suspect by the police officers, an act which the majority would conclude to be unlawful. However, once appellant is detained by the police in this situation, his freedom of movement is curtailed and he can be considered arrested. Since appellant is now arrested, what logical purpose is there in obtaining an arrest warrant? Would an arrest warrant somehow absolve the original arrest of the illegality which the majority perceives?

Under the circumstances of this matter, police are placed on the horns of an unsolvable dilemma. On the one hand, if the officers act efficiently and prevent a crime from occurring, they risk suppression of potentially relevant evidence.[1] On the other hand, under the majority's reasoning, the officers would have to allow the crime to develop to full fruition in order to lawfully seize potential evidence such as stolen property following the commission of the theft. Either scenario is fraught with negative consequences—either the evidence is suppressed, or the crime is permitted to be culminated under

1. Even though the seizure here involved cocaine, it could just as easily have involved stolen items, burglary tools or a weapon.

the watchful eye of the police. Neither result should be condoned by this Court.

Accordingly, I agree with the position espoused by Judge Eakin of the Superior Court that the suppression court erred in suppressing the fruits of the search. Even though the charges that were ultimately filed against appellant were for a misdemeanor, that does not mean that the arresting officer lacked probable cause to believe that appellant was involved in the act of attempting to commit the crime of theft for which no warrant of arrest is required. Accordingly, I would affirm the decision of the Superior Court on this basis.

Justice NEWMAN joins this dissenting opinion.